911 F.2d 732
 12 ITRD 2192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INTERNATIONAL UNION, UAW, et al., Plaintiffs-Appellants,
v.
Elizabeth H. DOLE, Secretary, U.S. Department of Labor, et
al., Defendants-Appellees,
General Motors Corporation, Amicus Curiae.
 No. 89-1922.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1990.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, JOHN W. POTTER, District Judge.*
 PER CURIAM.
 
 
 1
 This suit was brought by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), on behalf of a certified class of General Motors workers challenging the Secretary of Labor's interpretation of the eligibility requirements for additional trade readjustment allowances under the Trade Act of 1974, 19 U.S.C. Sec. 2101 et seq. The issue presented is whether a state waiver for good cause provision is, as the Secretary contends, inconsistent with the Act's requirement that workers seeking additional TRA benefits must file within 210 days after the Secretary first certifies them for eligibility. For the reasons stated more fully below, we conclude that the two are not inconsistent and reverse the district court's order which granted the Secretary's motion to dismiss.
 
 I.
 
 2
 The Trade act of 1974 established the Trade Adjustment Assistance Program (TAA) which was designed to assist workers who have lost their jobs as a result of foreign competition. Under the TAA, workers are eligible for training, job allowances, relocation allowances and trade readjustment allowances (TRA's) which are intended to supplement state unemployment insurance benefits. 19 U.S.C. Sec. 2291. Although TRA benefits are funded entirely by the federal government, as is the cost of administering the program, the Act authorizes the Secretary of labor to contract out the job of making individual eligibility determinations to the state agencies responsible for administering unemployment insurance programs. 19 U.S.C. Sec. 2311. These state agencies, designated by the Act as "cooperating agencies," are charged not only with receiving applications but with determining eligibility as well. Significantly, the Act provides that "[a] determination by a cooperating State Agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." 19 U.S.C. Sec. 2311(d).
 
 
 3
 In order to be eligible for basic TRA benefits, i.e., the first twenty-six weeks of benefits, the Secretary must certify that the displaced workers who are seeking benefits have been adversely affected by international competition. 19 U.S.C. Secs. 2271-2273. Once the Secretary has certified the group, the displaced workers may apply for TRA benefits pursuant to the eligibility guidelines outlined in the Act and in regulations promulgated by the Department of Labor. 19 U.S.C. Secs. 2291 & 2293; 20 C.F.R. Sec. 617.1 et seq. (1989).
 
 
 4
 In addition to basic TRA benefits, twenty-six additional weeks of benefits are available to assist adversely affected workers complete their approved training programs. 19 U.S.C. Sec. 2293(a)(3). However, in order to be eligible for additional TRA benefits, workers must file a bona fide application to undertake a training program approved by the Secretary under section 2296, within 210 days after the date of the worker's total or partial separation. 19 U.S.C. Sec. 2293(b).
 
 
 5
 The workers in this case were employees at various General Motors plants in the Detroit area who were laid off in 1987 and 1988. The Secretary certified them for TAA eligibility. After this certification, the workers' claims were processed by the Michigan Employment Security Commission (MESC), the state cooperating agency.
 
 
 6
 At the time these workers were laid off, the Secretary was required to "provide full information to workers about the benefit allowances, training and other services available ... and about the petition and application procedures, and the appropriate filing dates." 19 U.S.C. Sec. 2275(a). However, pursuant to MESC's own internal practice, they were instructed to file their claims for TRA and TAA training just before the expiration of their state unemployment insurance benefits. As a result of this advice, the workers filed their applications more than 210 days after they were first certified for eligibility, which made them ineligible for additional TRA benefits.
 
 
 7
 Recognizing that these workers were disqualified through no fault of their own and, indeed, that their disqualification was a direct result of its own oversight, the MESC sought the Secretary's approval to apply Michigan's waiver for good cause rule.[1] The Secretary, however, denied this request, concluding that the 210-day rule is a substantive eligibility requirement which may not, under any circumstances, be waived. It is this conclusion which we are now asked to review.
 
 II.
 
 8
 In general, as a rule, courts are to follow an agency's interpretation of a statute "unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381 (1969). However, while courts owe agency determinations due deference, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9 (1984).
 
 
 9
 Because the precise issue before the court is whether application of Michigan's waiver for good cause rule is inconsistent with, and, therefore, foreclosed by, the language of 19 U.S.C. Sec. 2293(b), an issue which presents a question of statutory construction, this court must attempt to divine Congress' intent in order to resolve the controversy. After reviewing what legislative history exists and, more importantly, after considering the Secretary's interpretation in light of the patently remedial nature of the Act, we conclude that the Secretary's interpretation does not give effect to the legislature's intent.
 
 
 10
 The Trade Act of 1974, passed during a mood of congressional largesse, resulted in large measure from "[c]ongressional frustration with the slow and ineffectual distribution of TRA benefits under the 1962 Act." International Union, U.A.W. v. Brock, 816 F.2d 761, 765 (D.C.Cir.1987). The 210-day rule, however, was not intended to act as a jurisdictional prerequisite to additional TRA benefits. Rather, it was designed to prevent workers who have no genuine interest in training from enrolling in programs at the last minute merely to take advantage of available funds.
 
 
 11
 Despite the Secretary's admission that the rule was designed to facilitate workers' access to additional TRA benefits, she nevertheless argues that because neither the statute nor the parallel regulation provide for any waiver, workers who fail to comply with the 210-day rule are absolutely barred from obtaining additional benefits. Since the Act is silent on the issue of waiver, however, and may, therefore, leave room for more than one interpretation, it should be construed in such a way as to give effect to the general intent of the legislature.
 
 
 12
 Again, the Secretary admits that the purpose of the rule is to discourage dilatory applications for training and to render ineligible for additional benefits those workers who fail to diligently pursue reentry into the work force. When a cooperating state agency determines that no dilatory conduct has occurred, however, and, instead, concludes that application of the 210-day rule does nothing to further the Act's remedial purpose and everything to frustrate it, we are hard-pressed to conclude that the Secretary's interpretation is consistent with Congress' intent. The District of Columbia Circuit recognized in a similar context that such an interpretation makes sense only if there was a congressional policy in favor of limiting TRA benefits. Brock, 816 F.2d at 766. That court found no evidence of such a policy. Nor do we.
 
 III.
 
 13
 Our view of the application of Michigan's waiver for good cause rule in this context necessary requires that the cooperating state agency's determination of good cause include a finding of genuine interest in training and the absence of dilatory conduct. With that in mind then, while the Secretary's interpretation compromises the Act's remedial purpose, allowing the MESC to determine that these workers made a good faith effort to comply with the Act, would, we conclude, properly balance the need to discourage dilatory applications with the need to ensure that displaced workers have every opportunity to gain new skills. Accordingly, the order of the district court is reversed and this cause is remanded for further proceedings according to law and consistent with this opinion.
 
 
 
 *
 The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 MESC Rule 210(2)(b) states:
 'Good cause for late filing of a new or additional claim' and 'good cause for late reporting to file a continued claim' are deemed to exist if there is a justifiable reason, determined in accordance with a standard or conduct expected of an individual acting as a reasonable person in light of all the circumstances, which prevented a timely filing or reporting as required by this rule.