**Stanley L. MATEOSKY, et al., Petitioners,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW (USX CORPORATION), Respondent**

Commonwealth Court of Pennsylvania.

Argued March 11, 1997.

Decided May 22, 1997.

John Stember, Pittsburgh, for Petitioners.

Lisa M. Sauder, Assistant Counsel, Harrisburg, for Intervenor, Dept. of Labor & Industry.

Before COLINS, President Judge, KELLEY, J., and JIULIANTE, Senior Judge.

COLINS, President Judge.

In this consolidated appeal, one hundred and thirty-seven petitioners (collectively, Claimants) petition for review of four orders of the Unemployment Compensation Board of Review (Board) affirming a referee's denial of Trade Adjustment Assistance (TAA) benefits under Part 2 of the Trade Act of 1974 (Act), 19 U.S.C. §§ 2271–2322. We affirm.

The Trade Act of 1974, like its predecessor, the Trade Expansion Act of 1962, established a program of worker adjustment assistance to assist workers displaced by increases in imports.[1] Federally funded Trade Act benefits were intended to supplement state unemployment insurance (UI) benefits.[2] To compensate workers for "injury" caused by import competition, the Act provides for a host of TAA benefits, including Trade Readjustment Allowances (TRA), employment services, training, supplemental assistance while in training, job search allowances, and relocation allowances. 19 U.S.C. §§ 2291, 2295–2298. At issue in this case are basic TRA benefits, training, and additional TRA.

Claimants are all former employees of United States Steel's (USX) Maple Creek Mine (Mine) in Washington County, Pennsylvania. All of the Claimants became unemployed in January 1994 when the Mine shut down, and all of the Claimants applied for TAA benefits in July and August of 1994 as a result of the shutdown. Following closure of the Mine, the United Mine Workers' Association (Union) filed a petition with the U.S. Department of Labor (DOL) for certification of eligibility to apply for TAA benefits with respect to the Claimants' 1994 separation from employment when the Mine shutdown. DOL denied certification, concluding that increases in imports did not contribute importantly to the mine closing. 19 U.S.C. § 2272. At that time, the Union encouraged the Claimants to apply for benefits under 1985 and 1987 eligibility certifications applicable to Mine employees.

In 1985 and again in 1987, DOL certified that all Mine employees separated from employment during the periods in question were eligible to apply for TAA benefits. The certification periods were as follows:

| Cert. # | Cert. Date | Impact Date | Termination Date |
| --- | --- | --- | --- |
| 15841 | May 24, 1985 | Aug. 1, 1984 | April 19, 1985 |
| 17770 | May 5, 1987 | Jan. 1, 1986 | Oct. 15, 1988 |

For each certification period, the Claimants fall into two groups. Group 1 Claimants are Mine employees who were separated from employment during the certification period, but who returned to work before having received all of the state unemployment insurance (UI) benefits to which they were entitled. Group 2 Claimants are Mine employees who were separated from employment during the certification period and who qualified for, and received, TAA benefits at that time. In 1994, Group 1 and Group 2 Claimants applied for three types of TAA benefits: basic TRA, training benefits, and additional TRA. The Claimants request benefits for the 1994 separations from employment, based on their qualifying separations under the 1985 and 1987 certifications.

**Entitlement to Basic TRA Benefits**

To qualify for basic TRA benefits, an individual must meet statutory requirements as to certification, separation, wages and employment, entitlement to UI, exhaustion of

1. S.Rep. No. 93–1298, (1974), *reprinted in* 1974 U.S.C.C.A.N. 7273.

2. S.Rep. No. 93–1298, (1974), *reprinted in* 1974 U.S.C.C.A.N. 7206.

UI, availability and active search for work, and participation in training. 19 U.S.C. § 2291(a); 20 C.F.R. § 617.11. Regulation 617.11 states separate qualifying requirements for unemployment that begins before November 21, 1988 (pre–1988 requirements) and for unemployment that begins on or after that date (post–1988 requirements). Only the certification, separation, and exhaustion of state UI requirements are at issue in the instant case.

*Certification Requirements.* In order to qualify for basic TRA benefits, a worker "must be an adversely affected worker covered by a certification." 19 U.S.C. § 2291(a); 20 C.F.R. § 617.11(a)(1)(i). An "adversely affected worker" is one who has been separated from employment because of lack of work for an employer whose workers are covered by a certification. 20 C.F.R. § 617.3(b) and (c).

*Separation Requirements.* To meet the pre– and post–1988 separation requirements, the worker's "first qualifying separation ... before application for TRA must occur: (A) On or after the impact date of such certification; and (B) Before the expiration of the two-year period beginning on the date of such certification, or, if earlier, before the termination date, if any, of such certification." 20 C.F.R. § 617.11(a)(1)(ii) and (a)(2)(ii). The regulations define "first qualifying separation" as the first separation[3] within the certification period with respect to which the individual meets the applicable § 617.11 requirements. 20 C.F.R. § 617.3(t)(3)(i).

*Exhaustion of UI.* Under the pre– and post–1988 requirements, an individual must have exhausted all rights to any UI to which the individual was entitled and not have an unexpired waiting period applicable for such UI. 20 C.F.R. § 617.11(a)(1)(v) and (a)(2)(v).

*Eligibility Period for Basic TRA.* A worker's eligibility period is the 104–week period of consecutive calendar weeks during which basic or supplemental TRA benefits are payable. With respect to a first qualifying separation before August 23, 1988, the eligibility period begins with the first week following the week with respect to which the individual "first exhausts" all rights to regular UI compensation in the individual's first benefit period. 20 C.F.R. § 617.3(m)(1)(i). "First exhaustion of UI" means the first time the individual exhausts all rights to UI within the individual's first benefit period. 20 C.F.R. § 617.3(s). The "first benefit period" is the benefit period (as defined under state law) "after the individual's first qualifying separation or in which such separation occurs." 20 C.F.R. § 617.3(r). "Exhaustion of UI means exhaustion of all rights to UI in a benefit period by reason of: (1) Having received all UI to which an individual was entitled ... with respect to such benefit period; or (2) The expiration of such benefit period." 20 C.F.R. § 617.3(p).

With respect to a total qualifying separation occurring on or after August 23, 1988—if the individual had a prior first qualifying separation under the same certification—the eligibility period begins with the first week following the week in which such total separation occurred. 20 C.F.R. § 617.3(m)(1)(ii).

After reviewing the terms of the Act and regulations, the referee concluded that the Group 1 Claimants were not entitled to basic TRA after the 1994 separations because their eligibility periods with respect to the 1985 and 1987 certifications had elapsed. Applying the regulatory language cited above, the referee determined that the Group 1 Claimants exhausted their entitlement to UI at the end of the first benefit period (September 28, 1985 and September 26, 1987, for Certifications Nos. 15841 and 17770, respectively); therefore, their eligibility periods ended two years later, on September 26, 1987 and September 24, 1989, respectively.

■ On appeal, the Claimants argue that under the pre–1988 Act, the eligibility period for the Group 1 Claimants[4] did not begin to

---

**3.** For separations occurring before August 23, 1988, the first qualifying separation had to be a total or partial separation; for separations on or after that date, the separation must be a total separation.

**4.** We do not address the eligibility of Group 2 Claimants to basic TRA because the issue was not before the referee by stipulation. Referee's Decisions of March 27, 1995, Appeal Nos. TRA–95–06–N–0195 and TRA–95–06–N–0196, p. 4.

run until 1994 when they actually exhausted their entitlement to state UI benefits.[5] Claimants contend that under the pre–1988 Act, exhaustion of UI did not occur until the worker had actually received all of the UI compensation to which he was entitled. In support of that proposition, the Claimants cite the 1987 Board decision concerning the claim of John Jakiela.[6]

■ Initially, we note that Board decisions are not binding on this Court. Second, we disagree with the Claimants' interpretation of the *Jakiela* decision. We agree with the referee that the Board in *Jakiela* did not address or even consider the definition of "exhaustion." Under the pre–1988 Act, the 104–week eligibility period followed the first week *in the certification period* with respect to which the worker exhausted all rights to that part of his UI that was regular compensation. As required by the terms of the pre–1988 Act, the claimant in *Jakiela* exhausted his entitlement to UI within the certification period, not seven to nine years later. Furthermore, Regulation 617.3(p)—which provides that exhaustion may occur by reason of actual exhaustion or by reason of the expiration of the benefit year—pre-dates the 1988 amendments and would apply to defeat the Claimants' argument in this case regardless of whether we apply the pre– or post–1988 Act.

■ Apart from the issue of exhaustion and the Claimants' eligibility periods with respect to the 1985 and 1987 certifications, the Claimants are not entitled to basic TRA after the 1994 separations because they are no longer adversely affected. The Claimants are not separated from employment because of lack of work in adversely affected employment. 19 U.S.C. § 2319(2).

Adversely affected employment is "employment in a firm ... if workers of such firm ... are eligible to apply for adjustment

assistance [i.e., TAA] under this part." 19 U.S.C. § 2319(1). Workers are eligible to apply for TAA only as certified, 19 U.S.C. § 2272; and each certification specifies an impact date and a termination date reflecting DOL's determination that separations after that date are no longer attributable to the adverse effects of increases in imports. 19 U.S.C. § 2273. The certification period defines the point at which a worker becomes adversely affected and the time at which the worker ceases to be adversely affected. Accordingly, the Claimants are not adversely affected with respect to their 1994 separations, and they are no longer adversely affected with respect to the 1985 and 1987 certifications.

### Entitlement to Training Benefits

■ Section 236 of the Act provides for payment of the costs of approved training for adversely affected workers. Training benefits must be approved if the "State agency" determines that 1) no suitable employment is available for the adversely affected worker, 2) the worker would benefit from appropriate training, 3) there is a reasonable expectation of employment following training, 4) training is reasonably available at a reasonable cost, and 5) the worker is qualified to undertake and complete the training. 19 U.S.C. § 2296(a)(1); 20 C.F.R. § 617.22(a). Training benefits may be approved for any adversely affected worker who is a member of a certified group "at any time after the date on which the group is certified ... without regard to whether such worker has exhausted all rights to any unemployment insurance to which the worker is entitled." 19 U.S.C. § 2296(a)(8).

The referee concluded that the Group 1 and Group 2 Claimants were not entitled to training benefits because the Claimants were not adversely affected for the purposes of the Act following the 1994 Mine shutdown. For the reasons stated earlier in this opinion, we

---

5. Section 1430(g) of the Omnibus Trade and Competitiveness Act (OTCA) of 1988, which enacted the 1988 amendments, provides that the 1988 amendment to Section 233(a)(2) of the Trade Act would not apply to any total separation occurring prior to the effective date of the amendments if the application of the amendment would reduce the period for which the worker would be allowed to receive TRA under Sections

231 and 234 of the Act. Pub.L. No. 100–418, 102 Stat. 3808 (codified as amended in scattered sections of 19 U.S.C.). (Section 1430 of the OTCA is set forth as a note to 19 U.S.C. § 2397.)

6. Decision No. B–257032, dated April 3, 1987. Claimant's Exhibit 14.

concur in this conclusion, and we believe that our reasoning in that context sufficiently addresses the Claimants' argument that the Act imposes no specific time limitation on a worker's eligibility for training benefits.

**Entitlement to Additional TRA**

Section 233(a)(3) of the Trade Act provides that additional TRA may be paid "in order to assist an adversely affected worker" to complete approved training. 19 U.S.C. § 2293(a)(3). Additional TRA payments are to be made in the 26–week period that follows the last week of entitlement to basic TRA or that begins with the first week of training, if such training begins after the last week of entitlement to basic TRA. *Id.* The terms of the Act clearly show that additional TRA payments are the same benefit as basic TRA, except that additional TRA is paid for additional weeks (beyond the statutory 104–week period) while the claimant completes training. No additional TRA may be paid unless the claimant makes a bona fide application to an approved training program within 210 days after the first certification date or if later, after the worker's qualifying separation. 19 U.S.C. § 2293(b).

The Claimants are not entitled to additional TRA for three reasons (any one of which would suffice to disqualify them): 1) the Claimants are not adversely affected, 2) they did not apply for training within the 210–day limitation period, and 3) they are not entitled to basic TRA. Our conclusion that the Claimants are not adversely affected with respect to the 1985 and 1987 certifications or with respect to their 1994 separations disposes of this matter; however, in the event that this opinion is appealed, we examine the issues raised relevant to the referee's conclusion that the Claimants are not entitled to additional TRA.

■ The referee concluded that the Claimants are not entitled to additional TRA because they did not file applications for training within the limitation period. The referee rejected the Claimants' contention that the 210–day limitation should be waived because

the Claimants were not notified of their rights under the Act in 1985 and 1987 and were therefore not aware of the 210–day limitation. In support of this argument, the Claimants cite Section 1425 of the OTCA and an unpublished opinion of the Sixth Circuit Court of Appeals.[7] The referee concluded that the OTCA waiver provision applies only to a worker who has been continuously unemployed from the date of the qualifying separation and that none of the Claimants met that requirement.

Section 1425(b) of the OTCA waives the 210–day limitation period for any worker who had a qualifying separation during the period from August 13, 1981 and April 7, 1986; is enrolled in an approved training program; and has been unemployed continuously since the date of separation from the adversely affected employment.[8] The referee correctly concluded that the statutory waiver did not apply to the Claimants, given that their last separations from adversely affected employment occurred during the 1985 and 1987 certifications and given that none of the Claimants remained unemployed continuously since that time.

■ The Claimants also advance an argument of equitable estoppel, citing the Sixth Circuit's opinion in *Dole.* In *Dole,* Michigan authorities instructed laid-off General Motors workers to file their TAA claims just before the expiration of their state UI benefits. As a result of that advice, the workers applied for training after the 210–day limitation period, rendering them ineligible for additional TRA. Applying a Michigan Employment Security Commission rule recognizing good cause for late filing of a claim, the court granted the claimants a waiver for good cause and remanded the case.

The *Dole* opinion is distinguishable from the instant case for a number of reasons. Unlike the Claimants in the instant case, the claimants in *Dole* were applying for benefits with respect to separations that occurred within the applicable certification period.

---

7. *International Union, UAW v. Elizabeth Dole,* No. 89–1922, 1990 WL 120964, 1990 U.S.App. LEXIS 14665 (6th Cir. August 21, 1990).

8. Section 1425(b) of the OTCA is reproduced in a note, Waiver of Certain Time Limitations, following 19 U.S.C. § 2293.

Second, there is no indication that the claimants in *Dole* had returned to work for a period of years, resulting in their no longer being adversely affected. Third, in the instant case, a waiver of the 210–day limitation would not entitle the Claimants to additional TRA.

■ Finally, even if the Claimants had applied for training within the 210–day limitation period, they would not be entitled to additional TRA because they were not entitled to basic TRA. Additional TRA is nothing more than an extension of basic TRA predicated on the claimant's continuing enrollment in training. The eligibility period for additional TRA is the 26–week period following the eligibility period for basic TRA. Based on the eligibility periods determined above for basic TRA, the Claimants' 26–week eligibility periods would have begun to run either on September 26, 1987 or on September 24, 1989 (for the 1985 and 1987 certifications, respectively).

**Conclusion**

The Court recognizes that many of the Claimants are the Mine's most experienced and oldest workers, who must now learn new skills in order to find work outside the mining industry without the assistance of Trade Act benefits. As harsh as that reality may be, we are bound to uphold the terms of the Act and DOL's regulations. Were we to accept the Claimants' argument, any qualifying separation would, for some workers, establish lifetime entitlement to TAA benefits. We cannot ignore the Act's clear limitations on a worker's ability to collect TAA benefits. A certification, by its own terms, lasts for a limited period of time, and a worker who returns to work with his employer, without having to exhaust available state UI benefits, cannot be said to have been deprived of TAA benefits. The record indicates that those workers who experienced separations of employment lasting beyond their entitlement to state UI benefits did collect TAA benefits under the earlier certifications.

Accordingly, the orders of the Board denying Claimants' Trade Act benefits are affirmed.

*ORDER*

AND NOW, this 22nd day of May, 1997, the orders of the Unemployment Compensation Board of Review in the above-captioned matters are affirmed.